# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## Washington, DC

## UNITED STATES

v.

## Marlon D. HUTCHISON
## Machinery Technician Second Class, U.S. Coast Guard

## CGCMG 0132

## Docket No. 1090

## 27 June 2001

General Court-Martial convened by Commander, Seventh Coast Guard District. Tried at Charleston, South Carolina, on July 9-11 and 14-15, 1997.

| | |
|---|---|
| Military Judge: | CAPT Robert W. Bruce, USCG |
| Trial Counsel: | LTJG Julia Diaz-Rex, USCGR |
| Individual Military Counsel: | LTJG Susan Polizzotto, USCGR |
| Detailed Defense Counsel: | LT Brian D. Phelan, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Robert S. Schuda, USCG |
| | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | LT Benes Z. Aldana, USCGR |

## BEFORE
## PANEL FOUR
## BAUM, KANTOR, AND WESTON
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by a general court-martial before a military judge alone. Contrary to his pleas, he was convicted of the following offenses: one specification of rape and one specification of carnal knowledge in violation of Article 120 of the Uniform Code of Military Justice (UCMJ); one specification of sodomy by force and without consent in violation of Article 125, UCMJ; one specification of adultery, and one specification of indecent acts, in violation of Article 134, UCMJ. After announcing these findings, the military judge consolidated the specifications of rape and carnal knowledge into one offense of rape of a person who had not attained the age of sixteen years, and for sentencing said that he would consider only the one offense of rape. He also determined that the adultery specification was encompassed within the rape offense for purposes of punishment and dismissed that specification. Thereafter, the judge sentenced Appellant to a bad conduct discharge,

confinement for 28 months, and reduction to paygrade E-1, which the Convening Authority approved as adjudged.

Before this Court, Appellant initially assigned fourteen errors, three of which were submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (CMA 1982).[1]  Appellant's first assignment claims that there is insufficient evidence of penetration to sustain the offenses of rape, carnal knowledge, and adultery beyond a reasonable doubt.  This assignment is rejected, but will be briefly discussed.  Assignment XI, which was orally argued to the Court, asserts that the military judge committed prejudicial error by denying Appellant's request for expert assistance.  It, too, is rejected and will be briefly addressed.  The two other assignments that were orally argued were Assignment IV, that the military judge committed reversible error by admitting out-of-court statements from the alleged victim under the medical-treatment exception to the hearsay rule, and Assignment V, that the military judge committed prejudicial error by denying a motion to suppress unwarned statements Appellant made during an interview with a South Carolina social worker and a Coast Guard Family Advocacy Representative.  Those assignments are rejected, and we see no need to discuss them, other than to say that the statements that were admitted were harmless beyond a reasonable doubt in light of the overwhelming evidence of Appellant's guilt from the other evidence of record, which includes Appellant's own testimony admitting to acts that track closely with those related in the victim's testimony.  In addition to the foregoing assignments, a supplemental assignment of error was submitted, after oral argument, in response to a Court order for information concerning a state court conviction for offenses based on the same acts.  That assignment, which asserts that the Government failed to comply with Article 2-B-4 of the then-current Coast Guard Military Justice Manual (MJM), Commandant Instruction M5810.1C (Jan. 15, 1991), and, in so doing, violated Rule for Courts-Martial (RCM) 201(d)'s policy against second trials, will be discussed, explaining why the findings and sentence will not be set aside, as requested, but that the sentence will be modified.  Appellant's other assignments are summarily rejected.

---

[1] I. The evidence of penetration is insufficient as a matter of law and fact to support a conviction for rape, carnal knowledge or adultery.  II. The evidence of force and lack of consent is insufficient as a matter of fact and law to support a conviction for rape.  III. The evidence of penetration, force and lack of consent is insufficient to support a conviction for sodomy.  IV. The military judge erred in admitting statements made by TND under the medical hearsay doctrine.  V. The military judge erred in admitting statements made by Appellant to a South Carolina social worker.  VI. The military judge erred in not granting Appellant's RCM 917 request for a finding of not guilty.  VII. The military judge erred in finding Appellant guilty of both rape and carnal knowledge based on the same incident.  VIII. The errors in this case are cumulative to the point that the convictions must be set aside.  IX. The military judge improperly considered evidence improperly adduced on the merits for sentencing purposes.  X. Trial defense counsel provided ineffective assistance of counsel.  XI. The military judge erred in denying Appellant's request for expert assistance.  XII. Additional assignments of error submitted pursuant to *United States. v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (i) the military judge was biased against the Appellant in that he admitted to having a daughter the same age as TND; (ii) the trial defense team provided ineffective assistance of counsel in that they were caught by surprise by trial counsel's raising Appellant's EEO complaint at trial to Appellant's detriment; and (iii) Appellant has been subjected to double jeopardy in that he was convicted of committing lewd acts with a minor in South Carolina two weeks after the military trial.

## Background

All of the offenses relate to acts committed by Appellant with his twelve-year-old stepdaughter on a day when he was taking Prozac, a medication prescribed for his clinically diagnosed depression. Appellant and his wife both testified that the combination of his depression and the medication led to sexual problems within their marriage, which further depressed him, and contributed to his continued use of alcohol in addition to his Prozac medication.

On the day of the offenses, Appellant's wife was working and he was home alone with his stepdaughter, (TND). He testified that he took his usual dosage of Prozac and consumed a number of beers during the day. TND testified that in the afternoon, while watching television, Appellant told her that he thought she had a nice body. Sometime thereafter, she left the room and Appellant followed her to her bedroom where he instructed her to take off her clothes. When she did so, she said that Appellant took his own clothes off as well and proceeded to attempt to have intercourse with her, although the issue of whether he successfully penetrated her is contested. At some point, TND complained that "it hurt," and Appellant stopped. Appellant's testimony at trial confirms these acts, as well as digital penetration of TND's vagina, kissing her breasts and the placing of his mouth and tongue on her vagina. He also acknowledged that he caused her to touch his penis with her mouth. After these acts, Appellant expressed guilt and remorse to TND and insisted upon her calling her mother at work and his calling the police. Appellant's wife came home after she was called and tried to prevent him from calling the police, but was unsuccessful. Appellant left the house and turned himself in to the police when they arrived.

## I.

## Sufficiency of the Evidence of Penetration

Upon a claim by Appellant that the evidence is legally insufficient to sustain certain offenses, this Court must review the evidence in a light most favorable to the prosecution and determine whether, based on that evidence, a reasonable factfinder could have found all the essential elements of those offenses beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324-25 (CMA 1987) (citing *Jackson v. Virginia*, 433 U.S. 307, 319 (1979)). Our Court also has an obligation to independently determine whether the findings are factually sufficient, and the test in that regard is whether this Court is convinced of Appellant's guilt beyond a reasonable doubt, after weighing the evidence of record and making allowances for not having observed the witnesses. *Turner*, 25 M.J. at 325. Appellant argues that the evidence in the record is deficient in both respects by failing to establish the element of penetration, required of rape, carnal knowledge, and adultery.

Appellant's testimony confirms that he attempted these acts, leaving as an issue of fact only the question whether or not he succeeded. Medical evidence and expert testimony indicate that TND had suffered an injury consistent with penetration of her vagina by a blunt object. That evidence and the testimony of TND, when considered in a light most favorable to the Government, establish a basis for a reasonable factfinder to find penetration beyond a

reasonable doubt, which satisfies the standard for legal sufficiency. Factual sufficiency, as indicated, requires more than that. In fulfillment of our responsibilities under Article 66, UCMJ, we must be satisfied beyond a reasonable doubt by the evidence of record.

Much of TND's testimony indicates only that Appellant "tried" or "attempted" to penetrate her, testifying, for example, that: "He tried to put his penis into me"[R. at 345]; "He was trying to put his penis into me" [R. at 345]; "Okay. He tried to put his penis into me." [R. at 345]. However, when the judge asked trial counsel to try to establish with more definiteness where Appellant put his penis and his fingers, the following exchange took place:

Q. Where did you – where did Hutch put his penis and his fingers?
A. In my vagina.

[R. at 346].

In addition to that answer there is compelling testimony from Doctor Elizabeth Baker, a pediatrician who examined TND four days after the event, and found that TND's hymen was torn and that she experienced pain when the vagina was examined. Doctor Baker testified that: "What I saw in the exam and the amount of tenderness that she exhibited was not consistent with attempted penile penetration, but was diagnostic of vaginal penetration." [R. at 554]. Moreover, according to Doctor Baker, the likely cause of TND's broken hymen and the pain experienced by TND at the time of Appellant's actions was the insertion of his penis into her vagina. Doctor Baker's testimony convinces us beyond a reasonable doubt that Appellant penetrated TND's vagina. Accordingly, we reject the first assignment of error.

## II.

### Denial of Appellant's Request for Expert Assistance

Prior to trial, Appellant requested that the Government provide him with the services of a specific civilian forensic psychiatrist, or a government substitute of similar qualifications, to assist in developing defenses based on Appellant's mental condition at the time of the offenses, and also to assist with evidence in extenuation and mitigation, should such be needed. The convening authority denied the request for the named psychiatrist, and offered, instead, the assistance of an expert, who was neither a forensic psychiatrist nor a medical doctor. Two days later, the convening authority offered Appellant a forensic psychiatrist as a second expert. That doctor, a Navy Lieutenant Commander (LCDR), evaluated Appellant and provided him with an opinion. Subsequently, however, Appellant renewed his request for the civilian psychiatrist by motion with the military judge, asserting, among other things, that the LCDR held scientifically divergent views from the requested civilian and, therefore, was not an adequate substitute. The military judge denied this motion, supporting his action with findings of fact and conclusions of law. Appellant asserts here that the military judge's denial of the requested expert assistance was prejudicial error.

In ruling on this assignment, we first note that "[d]ue process of law requires, as a minimum, 'that when a defendant demonstrates to the trial judge that his sanity at the time of

4

the offense is to be a significant factor at trial,' the accused must have 'access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.'" *United States v. Mustafa*, 22 M.J. 165, 169 (CMA 1986) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985)). Appellant had access to two psychiatrists. In addition to the forensic psychiatrist who was made available as an expert assistant for trial preparation, a staff psychiatrist at the Charleston Naval Hospital treated Appellant for a major depressive disorder about a month and a half before the offenses and prescribed the medication Prozac for the condition.

Before trial, that doctor and a psychology intern, who had been seeing Appellant for his depression, conducted a mental examination of him at Government request pursuant to RCM 706, and concluded that, while Appellant's major depressive disorder was a severe mental disease or defect, Appellant was, nevertheless, able to appreciate the nature and quality or wrongfulness of his conduct and he was mentally competent to stand trial. In the words of the military judge at trial, the problem for the defense "is that none of the doctors that has evaluated the accused and reviewed his records to date is willing to testify that they believe that the accused was insane or suffering from a diminished capacity at the time the offenses occurred." [Appellant Ex. XXXI].

The judge found that Appellant had established that the psychiatrist he requested could testify to the following: (1) that Appellant may be suffering from a bi-polar mental disease, rather than the uni-polar mental disease with which he has been diagnosed, and that such could have caused him to undergo a manic episode at the time of the offenses; or (2) that Appellant may have suffered a manic episode at the time of the offenses as a side effect of Prozac; or (3) that the effect of alcohol consumed by Appellant may have been potentiated by the use of Prozac causing involuntary intoxication or diminished mental capacity when the offenses were committed. See *United States v. Hensler*, 44 M.J. 184 (1996), for a discussion of similar defenses raised by the testimony of a defense psychiatrist. The judge further found, however, that these possibilities are speculative and hypothetical and that no expert who has examined Appellant and his medical history is of the opinion that any of the foregoing possibilities occurred. Most importantly, the judge found that Appellant has not established the likelihood that his requested psychiatrist, or another substitute, would come to a different conclusion about these issues than the experts who have already examined him.

The recent case of *United States v. Gunkle*, No. 00-0092, 2001 C.A.A.F. LEXIS 560 (May 21, 2001) sets out the following current guidance on the issue of defense entitlement to expert assistance as compiled from other opinions of our higher court:

> An accused is entitled to expert assistance provided by the Government if he can demonstrate necessity. *United States v. Garries*, 22 M.J. 288, 291 (CMA 1986). To demonstrate necessity, an accused "must demonstrate something more than a mere possibility of assistance from a requested expert . . . ." An accused "must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a

fundamentally unfair trial." *United States v. Robinson*, 39 M.J. 88, 89 (CMA 1994), quoting *Moore v. Kemp*, 809 F.2d 702, 712 (11th Cir.), *cert. denied*, 481 U.S. 1054, 95 L. Ed. 2d 847, 107 S. Ct. 2192 (1987). This Court has adopted the three-pronged test for determining necessity: (1) Why is the expert needed? (2) What would the expert accomplish for the defense? and (3) Why is the defense counsel unable to gather and present the evidence that the expert assistant would be able to develop? *United States v. Ford*, 51 M.J. 445, 455 (1999), quoting *United States v. Gonzalez*, 39 M.J. 459, 461 (1994); *see also United States v. Ndanyi*, 45 M.J. 315, 319 (1996).

*Id.* at *14-15.

The judge found that Appellant had failed to show that expert assistance was necessary, his defense counsel having become adequately knowledgeable about his diagnosis, treatment, and various other issues that could potentially raise defenses. Furthermore, the judge found that Appellant had failed to show that the Government had not provided an adequate substitute for the requested expert and, in view of the lack of evidence that the substitutes offered by the Government were not adequate, that denial of the assistance of the requested expert would not result in a fundamentally unfair trial. The judge's denial of Appellant's motion for expert assistance is well supported by these, and other findings, with which we agree. They also justify denial of Appellant's requested assistance based on the guidance provided by our higher court's opinions. Accordingly, we have determined that the judge did not err when he denied Appellant's motion and the assignment is rejected.

## III.

### Subsequent Trial By State Authorities for the Same Offenses

#### a. Issue of Policy Versus Authority

In an Affidavit submitted with his assignment of errors, Appellant asserts that two weeks after his court-martial he was tried in a South Carolina state criminal court for the same misconduct and convicted of committing lewd acts with a minor. Based on this occurrence, Appellant asserts, pursuant to *United States v. Grostefon*, 12 M.J. 431 (CMA 1982), that he has been subjected to double jeopardy in violation of the Fifth Amendment of the Constitution. We have rejected that assignment because the double jeopardy clause does not prohibit trial by two separate sovereign jurisdictions for the same offense. *Abbate v. United States,* 359 U.S. 187 (1959); *Bartkus v. Illinois*, 359 U.S. 121 (1959); RCM 201(d). *See* Gilligan & Lederer, *Court-Martial Procedure*, Par. 2-40.00. While it is constitutionally permissible to try a person both by court-martial and in State court for the same act, the discussion following RCM 201(d) states that "as a matter of policy a person who is pending trial or has been tried by a State court should not ordinarily be tried by court-martial for the same act." Moreover, according to RCM 201(d)(2), a decision to court-martial an individual under these circumstances is subject to regulations of the Secretary concerned.

**b. Coast Guard's Regulatory Implementation of Policy Against Second Trials**

The Coast Guard's Secretarial regulations on this subject were found in the Military Justice Manual (MJM), paragraph 2-B-4 of the 1991 edition, which provided the following:

a. No person in the Coast Guard may be tried for the same acts which constitute an offense against state or foreign law, and for which the accused has been tried or is pending trial by the state or foreign country, without first obtaining authorization therefor from Commandant (G-L). Letter requests for authorization shall contain complete justification as to why deviation from the general policy against second trials set forth in the discussion following RCM 201(d), is appropriate.

b. "Pending trial" means that an indictment or information has been brought against the accused. For purposes of paragraph a., any pretrial diversion or similar program does not amount to being "tried" or "pending trial." In any case, close coordination with officials of other jurisdictions may be necessary to ensure that the policy against second trials is followed, and because many such jurisdictions have laws prohibiting second trials for persons tried in federal courts or courts-martial.

After oral argument was heard in this case, we issued an order seeking further information concerning Appellant's second trial. Among other things, Appellant and the Government were asked whether Appellant was "pending trial by the state" within the meaning of the foregoing regulations at the time of his court-martial, and, if so, whether authorization for trial by court-martial was obtained pursuant to those regulations. Additionally, the parties were asked whether the answers to these questions raised any issues.

**c. Appellant's Assertion of Noncompliance with Coast Guard Regulation**

In a supplemental brief responding to this order, Appellant advised that he was indicted in South Carolina and, thus, was pending trial by the state under the terms of the MJM. By filing pertinent supporting documents, he further informed the Court that subsequent to the indictment the convening authority submitted a request for court-martial authority to the Commandant (G-L), and that the request was granted the next day. Appellant contends that the MJM requirement for complete justification for deviation from the Presidential policy against second trials expressed in the RCM 201(d) discussion was not met by the convening authority's letter request, and that the resulting grant of authority to court-martial him was a violation of that policy. For that reason, he asks the Court to set aside the findings and sentence.

The convening authority's request to proceed with a general court-martial contemporaneously with prosecution by South Carolina offers the following as justification in the letter's third and fourth paragraphs:

The government counsel has spoken with the South Carolina Assistant Solicitor General assigned to the case. The Assistant Solicitor General advised government

7

counsel that if the Coast Guard goes forward and tries MK2 Hutchison in a courts-martial forum that the state would place the case on hold until the Coast Guard action is final.

The assigned Assistant Solicitor General further advised the government counsel that the case load for the South Carolina Solicitor's Office is extremely large and it would take about a year for the state to proceed to trial. The Coast Guard's interests clearly warrant a more prompt resolution of the charges.

Appellant contends that the vague assertion that the "Coast Guard's interests clearly warrant a more prompt resolution of charges" is not the kind of complete justification contemplated by the MJM, that the convening authority's request does not even establish what the Coast Guard's interests are, and that the subsequent prompt state trial two weeks after Appellant's court-martial belies the asserted basis for departure from the policy against two prosecutions for the same offense. In regard to the latter contention, Appellant does not assert that there was an intentional misrepresentation by anyone concerning the expected delay in prosecution by the state, and we assume that all information concerning this matter was given in good faith. Even if given in good faith, however, the comments concerning the state's intentions are open to more than one interpretation. From our reading of the letter request, we believe it is possible that the grant of authority to court-martial Appellant could have been given in the mistaken belief that the state would forego further prosecution if the Coast Guard went forward with a court-martial. The letter request, however, did not convey an explicit commitment in this regard from the state. Without having obtained such a commitment, the Coast Guard had no assurance against subsequent state prosecution. Appellant maintains that one of the Coast Guard's interests certainly should have been to honor, to the extent possible, the policy against second trials, an obligation, which, he says, the Coast Guard failed to meet, when, without an agreement from the state not to prosecute, the convening authority requested and received approval to court-martial him.

### d. Determining Coast Guard Interests

We, too, question why it was clearly in the Coast Guard's interest to try Appellant by court-martial when it was known that the state had indicted him. We can understand the importance of expeditious resolution of Appellant's status with the Coast Guard, but that could have been accomplished by administrative action with relative ease, leaving the criminal prosecution to civilian authorities. In this regard, we judicially note that, for the kind of misconduct alleged against Appellant, the Coast Guard Personnel Manual, COMDTINST M1000.6A, Art. 12.B.18, authorizes administrative separation with an other than honorable discharge. We also note that the Coast Guard's administrative process is not subject to the same rigorous standards and procedures of a general court-martial. As a result, it should be quicker and less cumbersome to carry out. We see no reason why administrative separation from the Coast Guard, joined with criminal prosecution in a state court, would not have satisfied both the policy against two trials and the other interests of the Coast Guard in

8

speedily resolving Appellant's status.[2]

No assertion has been made of any unique impact on the Coast Guard from Appellant's offenses, nor does such appear from the evidence of record. To the contrary, all aspects of this case are manifestly civilian in nature. These offenses against a civilian victim, in a private home, in the civilian community, occurred while Appellant was off duty. Moreover, as Appellant asserts in his supplemental brief, he reported the offenses to civilian authorities, not the Coast Guard, and civilian authorities arrested him; he spent a night in civilian detention, civilian authorities investigated him, he received defense support from the public defender's office, and the state expressed its intent to prosecute him. Furthermore, the victim was taken by civilian police to a civilian hospital for examination by a civilian doctor, with subsequent examinations also conducted by civilian practitioners at the state's behest. Moreover, along with the civilian police investigation, the South Carolina Department of Social Services exercised cognizance over the case for state family court purposes, which included interviewing Appellant, the victim, and her mother.

If the military justice system were still subject to the strictures of *O'Callahan v. Parker*, 395 U.S. 258 (1969), the Government would be hard pressed to demonstrate the necessary service connection that would permit prosecution by court-martial. Just because that service connection requirement was abandoned by the Supreme Court in *Solorio v. United States*, 483 U.S. 435 (1987), leaving courts-martial with virtually unlimited subject-matter jurisdiction, does not mean that jurisdiction should be exercised in every instance, whether or not there is a discernible military interest. It certainly appears to this Court that an amplification of the MJM's paragraph 2-B-4 is warranted to reflect that a military trial should not be held, in addition to a civilian trial for the same offense, when no special service need for that action is apparent. Helpful guidance on this subject could be provided by the old "service connection" tests. If two trials for the same offense continue to be authorized, without better justification than we have here, we fear a disposition towards restricting military jurisdiction by those with authority to do so could very well develop.

Despite our views on this matter, authorization for Appellant's court-martial was granted by the Commandant (G-L), thus, comporting on its face with the Secretarial regulation. Accordingly, we cannot say that jurisdiction to try Appellant by court-martial was lacking. *See United States v. Kohut*, 44 M.J. 245 (1996). Furthermore, we see no other basis that warrants setting aside the findings and sentence, as Appellant requests. We find no reason to take the specific action requested by Appellant, but we are nevertheless concerned that Appellant was tried and punished twice for the same acts. While we have no authority to do anything with respect to the South Carolina court's conviction and sentence, we can lessen its effect by modifying the court-martial sentence. Indeed, we have an obligation under Article 66(c), UCMJ to affirm only that portion of a sentence that we determine in the interest of justice should be approved. In the words of *United States v. Claxton*, 32 M.J. 159, 162 (CMA 1991), "A clearer *carte blanche* to do justice would be difficult to express." In exercising this authority, the fact that Appellant was tried and punished twice for the same acts weighs

---

[2] We think it is important to note that from the outset Appellant's indecent actions with his stepdaughter were not in controversy. Thus, a trial was not needed to resolve what had happened. Rather, the trial was needed only to determine the consequences of those actions.

heavily in our determination of the sentence that should be approved.

### e. Sentence Appropriateness

Evidence at trial bearing on an appropriate sentence reveals Appellant as a second class petty officer with ten years of good service in the Coast Guard, and whose personnel record contains numerous positive entries. A Coast Guard family service case-worker, Appellant's treating psychiatrist, a clinical psychologist, and a psychology intern all gave testimony in Appellant's behalf that was favorable. These witnesses did not see Appellant as a pedophile or sexual predator, but, rather, as an individual who had experienced a single regressive episode, which he immediately recognized as wrong, and for which he assumed full responsibility. His sincere expressions of remorse and guilt, along with his acceptance of responsibility, convinced these witnesses that Appellant had good potential for rehabilitation. This evidence reinforces our belief that Appellant should not have been tried and punished twice for these offenses, absent evidence of a special military need for a court-martial. We have held that there is no double jeopardy bar to a second trial, just as there is no bar to a court-martial after nonjudicial punishment has been imposed for serious offenses. However, as the Court of Military Appeals stated in *United States v. Pierce*, 27 M.J. 367, 369 (CMA 1989), with respect to trial after nonjudicial punishment: "It does not follow that a servicemember can be twice *punished* for the same offense . . . ." Also, as in *Pierce*, we believe steps should be taken to lessen the effect of the second punishment.

Appellant has already served the twenty-eight months confinement from his court-martial, and the five years confinement imposed by the South Carolina court has been suspended in part on probation. If we limit Appellant's court-martial sentence to the confinement he has served, two convictions will admittedly remain with him, but the sentence would be ameliorated in such a way that there would be little semblance of double punishment. Furthermore, the Coast Guard would still have the wherewithal to belatedly separate Appellant with the administrative discharge he could have received initially. Normally, a punitive discharge and reduction in paygrade would appear to us as appropriate sentence elements for the kind of offenses committed by Appellant. Under all the circumstances of this case, however, we do not consider that those sentence components should be approved.

In light of the foregoing, the findings and only so much of the sentence approved below as provides for confinement for twenty-eight months are affirmed. The bad conduct discharge and the reduction to E-1 are expressly disapproved.

WESTON, Judge, concurring:

I agree with Chief Judge Baum's assessment that in this case the policy set forth in the discussion to RCM 201(d) was subverted, albeit apparently without malicious intent. This policy against two trials for the same offense, as further implemented by the applicable Service regulation, requires extraordinary circumstances to justify proceeding with a trial by court-martial when a State criminal prosecution is pending. This policy follows the practice of Federal prosecutors generally, and reflects the comity between the Federal and State

judicial systems. The reasons for this policy do not require lengthy explanation—quite simply, doubling up on criminal prosecutions strikes most people as unfair. To use an analogy from the game of football, it is the equivalent to tacklers "piling on" when the ball carrier is already down.

The sole justification for subjecting Appellant to a second criminal trial appears to have been the urge to speedily punish him. While that might well have been a sufficient basis for acting, it would seem to be a concomitant responsibility to at least attempt to gain the State's agreement to waive its prosecution in favor of the military proceeding, which apparently was believed would prove much speedier than the State prosecution. However, this justification lost most of its persuasive force when the State proceeded to trial a bare two weeks following the conclusion of Appellant's general court-martial. As a result, Appellant was sentenced to an additional five years confinement. On the facts of this case, and with the benefit of hindsight, it is clear that the interest in gaining a speedy resolution of Appellant's criminal conduct did not necessitate a departure from the policy against instituting court-martial proceedings when a State criminal proceeding for the same conduct pends. In short, this court-martial amounted to "piling on."

In the absence of the State's punishment of Appellant, I would agree with Judge Kantor that it is difficult to find the penalty adjudged in this case inappropriately severe. While I agree with many of the other points made in Judge Kantor's dissent, I am not willing to assume that the punishment adjudged in the State criminal case was reduced due to the punishment imposed by the Coast Guard. Moreover, I do not agree with the implication in his dissent that this Court's authority is limited to preventing miscarriages of justice or abuses of discretion. This Court has been directed by Congress to affirm ". . . only such findings . . . or amount of the sentence, as it …determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ. I am convinced that under these circumstances fairness demands that Appellant's sentence be reassessed. Although I do not come easily to the conclusion, I agree that disapproval of the bad conduct discharge and the reduction in paygrade are appropriate in this case.

KANTOR, Judge, concurring in part and dissenting in part:

I concur with the majority as to its resolution of the initially assigned errors. However, I respectfully dissent from certain portions of the majority and concurring opinions addressing the supplemental assignment of error asserting that the Government failed to comply with Article 2-B-4 of the then-current MJM, Commandant Instruction M5810.1C, thus violating Rule for Courts-Martial (RCM) 201(d)'s policy against second trials. Despite finding that there was no double jeopardy issue; that the Coast Guard had jurisdiction to try the Appellant; and that there was "no other basis that warrants setting aside the findings and sentence"; the majority nevertheless invokes this Court's plenary review authority granted by Article 66(c), UCMJ, 10 U.S.C. § 866(c) to disapprove both the bad conduct discharge and the reduction to E-1. I am unable to agree that the interests of justice demand such action and I would affirm the sentence as adjudged and approved by the convening authority.

Initially, I am hard pressed to find a violation of the Coast Guard's policy contained

11

within Article 2-B-4 of the MJM. Knowing that the Appellant had been indicted in South Carolina, the general court-martial convening authority, on May 27, 1997, requested permission from Commandant (G-L)[3] to proceed to trial. Along with the written request was a copy of the Charge Sheet containing allegations of rape, sodomy, adultery, and indecent acts, all involving the Appellant's minor step-daughter. Commandant (G-L) permission to try the Appellant at a general court-martial was granted by letter the following day. The convening authority's request indicated that South Carolina would place the case on hold until the Coast Guard action was complete. In addition, the request stated that the South Carolina Assistant Solicitor General had indicated to the Coast Guard that it could be a year or more before the case could be tried in South Carolina. No doubt fearing extended delay, the Coast Guard understandably desired a more prompt resolution of the charges. While it is unclear how South Carolina authorities were suddenly able to bring action against the Appellant two weeks after his court-martial, there was never any indication that South Carolina would forego trial should the Coast Guard court-martial the Appellant. The majority opinion concedes as much. Nor does Appellant assert that there was an intentional misrepresentation by anyone concerning the expected delay in state prosecution. Finally, it was also assumed that all information was given in good faith. While subsequent events beyond the control of the Coast Guard did occur regarding the state prosecution, these events can in no way lead to a conclusion that the authorization was defective or issued in error. In addition, the Appellant's failure to raise any issues regarding this process at trial constitutes waiver. *See* RCM 905(b)(1).

Even if the Coast Guard had violated its policy, such a violation would not affect the jurisdiction of the court-martial. *See United States v. Kohut*, 44 M.J. 245 (1996); *United States v. Sloan*, 35 M.J. 4 (CMA 1992); *United States v. Jette*, 25 M.J. 16 (CMA 1987). Nor does the double jeopardy clause of the Fifth Amendment to the Constitution aid the Appellant. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794 (1989); *Childers v. Goldman*, 110 F. Supp. 2d 576 (E.D. Mich. 2000). The majority decision quite clearly concedes these points and, furthermore, does not appear to premise its action on any other legal issue. Instead, relying upon the expansive authority of Article 66(c), UCMJ, and *United States v. Claxton,* 32 M.J. 159 (CMA 1991), the majority reaches the conclusion that an injustice was perpetrated against the Appellant primarily because he was tried and punished twice for the same acts in violation of Coast Guard policy.

While I recognize the plenary power granted this Court by Article 66(c), UCMJ, to prevent miscarriages of justice or abuses of discretion, the alleged error in this case hardly rises to that level. Unlike the majority, my sense of justice simply is not offended by the facts of this case. First, even assuming that Coast Guard policy was violated, it would be difficult to imagine how a violation of Article 2-B-4 of the then current MJM would constitute a miscarriage of justice. Violations of policy normally do not rise to the level of legal error. *See Sloan,* 35 M.J. at 9. Next, Article 59(a), UCMJ, 10 U.S.C. § 859(a), provides that a "sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." *See United States v. Gammons,* 51 M.J. 169, 181 (1999). Here, we have no legal error, let alone one that materially affects the substantial rights of the Appellant. By providing significant sentence

---

[3] The symbol G-L represents the Office of Chief Counsel of the United States Coast Guard.

relief, the majority is, in effect, implying that Article 2-B-4 of the MJM is designed to bestow a right upon the accused. *See Sloan,* 35 M.J. at 9; *see also United States v. Caceres*, 440 U.S. 741 (1979). I do not believe that to be the case. Although the version of the MJM that was in use at the time of Appellant's court-martial was silent as to the regulation's purpose, the current MJM, Commandant Instruction M5810.1D (Aug. 17, 2000), contains an additional sentence indicating that the Coast Guard policy is based on comity between the Federal Government and State/Foreign Governments and is not intended to confer additional rights upon the accused.[4] The regulation at issue in *Kohut, supra*, was virtually identical and deemed not to provide the Appellant with standing to complain about its violation.

In the final analysis, the charges upon which the Appellant was convicted are serious and involve a variety of sexual improprieties with his twelve-year old stepdaughter. It cannot be argued that a bad conduct discharge and reduction to E-1, along with the confinement, are not appropriate in this case. Even though the Appellant was subsequently tried by South Carolina, I do not believe the "interests of justice" demand sentence reassessment. While there were two separate trials involving the same acts of misconduct, it is clear that the South Carolina authorities took into account the sentence adjudged at the court-martial when it awarded the Appellant a five year suspended sentence on two years probation. Under these facts, I do not believe that Article 66(c) requires the bad conduct discharge and the reduction to E-1 to be disapproved.

For the Court,



//s//
Kevin G. Ansley
Clerk of the Court

---

[4] *See* Article 3-B-4 of the current MJM, Commandant Instruction M5810.1D (Aug. 17, 2000).