# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Marlon D. HUTCHISON
### Machinery Technician Second Class (E-5), U.S. Coast Guard

## CGCMG 0132

## Docket No.  1090

## 3 June 2003

General Court-Martial convened by Commander, Seventh Coast Guard District.  Tried at Charleston, South Carolina, on 9-11, 14-15 July 1997.

| | |
|---|---|
| Military Judge: | CAPT Robert W. Bruce, USCG |
| Trial Counsel: | LTJG Julia Diaz-Rex, USCGR |
| Individual Military Counsel: | LTJG Susan Polizzotto, USCGR |
| Detailed Defense Counsel: | LT Brian D. Phelan, JAGC, USNR |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | LT Sandra J. Miracle, USCG |

### BEFORE
### THE COURT *EN BANC*
#### BAUM, PALMER, CAHILL[*]
Appellate Military Judges

PALMER, Judge:

A panel of this Court first decided this case on 27 June 2001, and affirmed findings of guilty and twenty-eight months confinement.  However, after considering, among other things, Appellant's subsequent conviction and punishment by state authorities for the same acts underlying the court-martial offenses, it disapproved that portion of the sentence providing for a bad conduct discharge and reduction to paygrade E-1.[1]  Upon request by the Government, the Court sitting as a whole reconsidered and reaffirmed that decision, but limited its decision to legal issues relating to the Court's consideration of the state proceeding.  Finding no error contributing to the sentence action, the Court expressly refrained from reviewing the court-martial sentence again, noting that at least one of our higher court's judges, former Chief Judge Everett, believed

---

[*] Neither Judge Kantor nor Judge Bruce participated in this decision.  Judge Bruce was the trial judge below and Judge Kantor recused himself from the earlier decision on reconsideration.
[1] United States v. Hutchison, 55 M.J. 574 (C.G. Ct. Crim. App. 2001).

it was not in our power to reconsider *en banc* a panel's determination of sentence appropriateness.[2]   Thereafter, pursuant to Article 67(a)(2), the Judge Advocate General (JAG) ordered the case sent to the Court of Appeals for the Armed Forces.[3]   The JAG certified four issues for review.[4]   On 30 August 2002, that Court remanded the record to us for clarification in order to determine whether this Court abused our discretion by seeking to lessen the effect of the punishment from the state court proceedings, rather than properly exercising our Article 66, UCMJ, authority by taking into account the conviction and punishment by state authorities in considering whether the military sentence was appropriate.  Our superior court specifically directed us to provide that clarification in the form of a *de novo* review of sentence appropriateness under Article 66(c), UCMJ.  We were further instructed to then return the record directly to the Court of Appeals of the Armed Forces in order to allow them to complete their review under Article 67, UCMJ.  *United States v. Hutchison*, 57 M.J. 231, 234 (C.A.A.F. 2002).

In *United States v. Hutchison*, 56 M.J. 684 (C.G. Ct. Crim. App. 2001) we expressed our reservations regarding the propriety of *en banc* reconsideration of sentence appropriateness simply because we might disagree with the panel's sentence assessment.  However, it is necessary for us to follow our superior court's mandate and conduct a *de novo* review of the entire record to determine what sentence should be approved under Article 66(c), UCMJ.

The Court of Appeals for the Armed Forces also affirmed our prior holding that we may consider all materials in the record, including materials outside the trial transcript such as clemency submissions, when determining an appropriate sentence.  *United States v. Hutchison,* 57 M.J. 231, 234 (C.A.A.F. 2002).  In this case, that includes materials concerning Appellant's state prosecution and sentence imposed by state authorities for the acts for which he was tried by court-martial.  However, our superior court was very clear that we may consider such additional materials <u>solely</u> for the purpose of determining the appropriateness of appellant's <u>military</u> sentence (emphasis added). *Hutchison,* 57 M.J. at 234.

---

[2] United States v. Hutchison, 56 M.J. 684, 685 (C.G. Ct. Crim. App. 2001).

[3] At that time, the Judge Advocate General was the General Counsel of the Department of Transportation, as indicated by Article 1(1), Uniform Code of Military Justice, UCMJ.  Since then, effective 1 March 2003, the Chief Counsel of the Coast Guard has been designated as the Coast Guard's Judge Advocate General.

[4]  The JAG certified the following issues:
1. DID THE COAST GUARD COURT OF CRIMINAL APPEALS ERR WHEN IT CONSIDERED MATTERS CONCERNING A STATE COURT'S CONVICTION AND SENTENCE – IMPOSED AFTER A COURT-MARTIAL FOR THE SAME OFFENSES – AS PART OF THE "RECORD" DURING ITS ARTICLE 66(C), UCMJ, SENTENCE APPROPRIATENESS DETERMINATION?
2. DID THE CGCCA ERR WHEN IT DISAPPROVED APPELLANT'S BAD-CONDUCT DISCHARGE AND REDUCTION IN PAYGRADE IN AN EFFORT TO "LESSEN" THE "EFFECT" OF A STATE COURT'S CONVICTION AND SENTENCE THAT WAS IMPOSED AFTER A COURT-MARTIAL FOR THE SAME OFFENSES?
3. DID THE CGCCA ERR WHEN, DURING ITS SENTENCE APPROPRIATENESS DETERMINATION, IS CONSIDERED ALTERNATIVE ADMINISTRATIVE ACTIONS IN LIEU OF TRIAL BY COURT-MARTIAL THAT WERE AVAILABLE TO THE CONVENING AUTHORITY?
4. DID THE CGCCA ERR WHEN IT REASSESSED A SENTENCE BECAUSE IT QUESTIONED THE COAST GUARD'S DECISION TO COURT-MARTIAL A SERVICEMEMBER WHILE A STATE TRIAL WAS PENDING FOR THE SAME ACTS, DESPITE FINDING THAT THE COAST GUARD FOLLOWED SERVICE REGULATIONS?

At court-martial, Appellant was sentenced to a bad conduct discharge, confinement for twenty-eight months, and reduction to E-1 for raping, forcibly sodomizing, and committing indecent acts upon his twelve year-old step-daughter after he consumed alcohol in combination with prescribed anti-depressant medication. In a subsequent South Carolina state prosecution for committing lewd acts upon his step-daughter (based upon the same acts for which he was tried by court-martial), Appellant was sentenced to five years' confinement – all of which was suspended with Appellant to serve two years' probation. In his favor, he had never perpetrated any such offenses prior to those charged, immediately reported his actions, and appears from the record to be sincerely remorseful with good potential for rehabilitation. With those mitigating factors in mind, and considering *de novo* the state court's action and all other materials in the record, the adjudged and approved military sentence was not inappropriate for Appellant's misconduct. Therefore, we reverse our earlier decision and affirm the findings and sentence as adjudged and approved by the convening authority. The record shall be returned directly to the Court of Appeals for the Armed Forces, consistent with that Court's previous opinion.

CAHILL, Judge, concurring:

I write separately to reinforce that I do not join in modifying the original panel's action reducing Appellant's sentence simply because I may disagree with that panel's sentence assessment. To fulfill the mandate of the Court of Appeals of the Armed Forces, it is necessary for us to review the legal standard that the original panel applied when it modified Appellant's sentence to determine whether the court properly applied its authority under Article 66(c) in determining whether Appellant's sentence was appropriate or whether the court abused its discretion in an effort to lessen the punishment imposed by state authorities. I believe this Court's prior opinion shows that it applied an incorrect standard.

It is clear to me that this Court, in its initial review of this case, disapproved the bad conduct discharge and reduction to E-1 in order to lessen the effect of Appellant's South Carolina state conviction. *United States v. Hutchison,* 55 M.J. 574, 581-582 (C.G. Ct. Crim. App. 2001).[1] It is also clear that this Court did so because it disagreed with the Coast Guard's decision to prosecute Appellant at court-martial – even as it reluctantly agreed that the Coast Guard complied with its service regulations in seeking approval to prosecute Appellant and that there were no constitutional or statutory bars to doing so.[2]

---

[1] "While we have no authority to do anything with respect to the South Carolina court's conviction and sentence, we can lessen its effect by modifying the court-martial sentence." 55 M.J. at 581. "Also, as in [*United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989)], we believe steps should be taken to lessen the effect of the second punishment." *Id*. at 582.

[2] The opinion also implies that, before seeking authority to prosecute appellant under the applicable Coast Guard service regulations, Coast Guard authorities should have obtained an explicit agreement from South Carolina to forego any prosecution. 55 M.J at 580. I am unaware of any authority by which a military service may require a state to agree to relinquish its otherwise lawful jurisdiction over a criminal actor. I am also doubtful that state authorities would voluntarily agree to relinquish jurisdiction regardless of the outcome of a court-martial, nor do I believe that, even if such an agreement were made, a subsequent repudiation and prosecution by state authorities would retroactively deprive a military court of jurisdiction.

*Hutchison,* 55 M.J. at 581. The court continued by citing the United States Supreme Court's abandonment of a service connection test in *Solorio v. United States*, 483 U.S. 435 (1987) and proposing reinstatement of such a requirement as a matter of Coast Guard policy. *Id.* at 581. In essence, the prior decision set aside the bad conduct discharge and reduction in rate to "offset" the punishment imposed by the state. In its subsequent *en banc* reconsideration, this Court focused only on whether information concerning Appellant's state conviction was properly before the court and expressly disclaimed any reconsideration of the prior sentence determination. *United States v. Hutchison,* 56 M.J. 684, 685 (C.G. Ct. Crim. App. 2001).

The Court of Appeals of the Armed Forces recently addressed whether an accused was entitled to sentence credit for 925 days of confinement against an adjudged reduction in rank after a sentence was set aside on appeal. *United States v. Josey,* 58 M.J. 105 (C.A.A.F. 2003). The court concluded that "reprimands, reductions in rank, and punitive separations are so qualitatively different from other punishments that conversion is not required as a matter of law." *Josey* 58 M.J. at 108. This Court recently followed that approach in *United States v. Stirewalt*, 58 M.J. 552 (C.G. Ct. Crim. App. 2003).

On remand, we must consider all of the information in the record to determine whether Appellant's military sentence, as approved by the convening authority, is appropriate. Appellant was sentenced to a bad conduct discharge, confinement for twenty-eight months, and reduction to E-1 for serious crimes. After considering the entire record, I believe that the adjudged and approved military sentence was not inappropriate for Appellant's misconduct. The subsequent state prosecution resulted in an additional sentence of two years' probation with five years' confinement suspended. Twenty-eight months' confinement, a bad conduct discharge, reduction to E-1, and two years' probation with a possibility of up to five years' additional confinement by state authorities for violation of that probation is also not an inappropriate sentence for Appellant's misconduct. Additionally, by analogy to *Josey*, if a reduction in rate and punitive discharge are so "qualitatively different" from thirty months or more of military-imposed confinement that no credit is required, it more than follows that Appellant's state-imposed twenty-four month probation and suspended confinement need not be offset against the reduction in rank and punitive discharge imposed by court-martial. Therefore, I join in reversing the earlier decision and affirming the findings and sentence as adjudged and approved by the convening authority.

BAUM, Chief Judge, dissenting:

I dissent for several reasons. First, upon a review of the sentence *de novo*, I would adhere to the sentence decision initially affirmed by a panel of this Court and reaffirmed by the Court *en banc*, namely, twenty-eight months confinement, with the bad conduct discharge and reduction to E-1 expressly disapproved. More importantly, however, I question whether the sentence should even be reviewed *de novo* by this *en banc* Court without a finding first that error or abuse of discretion infected the prior decisions of this Court. The Court of Appeals for the Armed Forces did not make such a finding when it set aside our decision and directed the sentence review under Article

66(c) UCMJ. Instead, it indicated that clarification of our sentence action was warranted because our discussion of a wide variety of subjects raised the possibility that we acted for an improper reason.

At the outset of its opinion of 30 August 2002, the Court of Appeals for the Armed Forces stated: "For the reasons set forth below, we remand the case to the Court of Criminal Appeals for clarification." *United States v. Hutchison*, 57 M.J. 231, 232 (C.A.A.F. 2002). Thereafter, the Court explained that a state conviction and punishment for the same offenses could be considered by a court of criminal appeals in determining the court-martial sentence to be approved, if the state's action was part of the record. Furthermore, in so doing, the potential impact of administrative and nonjudicial means of disposition under service regulations, customs, and policies could also be considered. Since the state's conviction and punishment were included in the record, the Court observed that our action on the sentence was proper if we considered this information on the issue of appropriateness of the court-martial sentence, not because we viewed the state proceedings as inappropriate and sought to lessen the punishment from those proceedings. However, rather than returning the record for clarification, as previously indicated, the Court set aside our decision and ordered a *de novo* review of Appellant's military sentence under Article 66(c), UCMJ.

That kind of sentence review offers no insight or clarification with regard to our earlier sentence determination. Instead, it provides only a new sentence assessment by an *en banc* court with different judges who did not participate in the original sentence decision. Absent a finding of error or abuse of discretion, this new sentence review is an act not authorized by Article 66, UCMJ, according to former Chief Judge Everett. *United States v. Flowers*, 26 M.J. 463, 466 (C.M.A. 1988) (Everett, C.J., concurring in the result). Moreover, aside from the question raised by former Chief Judge Everett, we determined in our *en banc* reconsideration of this Court's panel decision that it would be inappropriate to reconsider the panel's sentence reduction simply because we might disagree with that sentence assessment. Judge Palmer joined in that decision, but now he has done the opposite by reconsidering the sentence based on our higher court's mandate. Surprisingly, the Court Appeals for the Armed Forces ordered this action without finding error or an abuse of discretion on our part, and without addressing former Chief Judge Everett's interpretation of Article 66(a), UCMJ. As a result, the legal basis for setting aside our decision and ordering a *de novo* sentence review is not readily apparent. Moreover, a finding of error or abuse of discretion in our earlier decision is not justified since this Court's sentence action met the terms for consideration of "material concerning the parallel civilian proceedings …. on the issue of sentence appropriateness." *Hutchison*, 57 M.J. at 234.

When this case was first decided, the Court focused on the Coast Guard's departure from the policy expressed in the discussion following RCM 201(d), that "a person who is pending trial or has been tried by a State court should not ordinarily be tried by court-martial for the same act." Our stated concern related to the appropriateness of a court-martial trial and sentence, while trial by the state was pending for the same acts. We pointed out that "all aspects of this case are manifestly civilian in nature,"

*Hutchison*, 55 M.J. at 581, and even suggested that administrative separation from the Coast Guard joined with criminal prosecution in a state court would have satisfied the policy against two trials for the same acts and at the same time would have met the Coast Guard's goal of speedy resolution of Appellant's status. We questioned why it was in the Coast Guard's interest to try Appellant by court-martial when it was known that the state had indicted him. We even suggested that the old "service connection" jurisdictional test might be a helpful standard for determining the service interest that we believed should be necessary to justify a second trial for the same acts. In short, we tried to make it clear that, of the two trials, if one was inappropriate, it was the court-martial, not the state trial. When we said: "[w]hile we have no authority to do anything with respect to the South Carolina court's conviction and sentence, we can lessen its effect by modifying the court-martial sentence," *Id.* at 581, we were merely stating the obvious, that our authority and responsibility related only to the court-martial sentence, not the state's punishment, and that we were going to take the state's trial and punishment into consideration when determining an appropriate military sentence. That is what happens every time extenuation and mitigation material contained in the record is properly weighed by a court of criminal appeals and contributes to that court's approval of a lesser sentence. In particular, what this Court's panel did with respect to the sentence equates to the action endorsed by the Court of Military Appeals in *United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989) for reducing a sentence when there has been prior nonjudicial punishment for the same acts.

Judge Cahill, in his concurring opinion, sees it differently. He views our statement with regard to modifying the court-martial sentence upon consideration of the state's trial and conviction as reflecting an incorrect standard of sentence review. As already indicated, I disagree. An incorrect standard according to our higher court would be an attempt to lessen a state's punishment, upon viewing that state's action as inappropriate. That is not what we did. Instead, we limited ourselves to determining the appropriateness of the court-martial sentence, after questioning the necessity for a military trial in the first place. The appropriateness of the civilian proceeding was never questioned. Accordingly, our action on the sentence was within the bounds set by the Court of Appeals for the Armed Forces as follows: "although the court [of criminal appeals] may take into account factors in the record such as the conviction and punishment by state authorities for the same act, it is limited to considering whether the military sentence is inappropriate." *Hutchison*, 57 M.J. at 234. In this regard, it should be noted that the portions of the sentence that we disapproved, the bad conduct discharge and reduction to paygrade E-1, support this conclusion. These sentence elements are purely military in nature. They are not punishment aspects that a civilian court may impose. Their disapproval had no effect on the state's conviction and punishment and they were never intended to impact the state's action in any way. Instead, the panel's action was intended to affect only the court-martial sentence and to result in what was deemed an appropriate military sentence, under the circumstances. It should also be noted that our action was not contrary to *United States v. Josey*, 58 M.J. 105 (C.A.A.F. 2003), as intimated by Judge Cahill. The Court in *Josey* held that sentence credit conversions that include punitive separations and reductions in rank are not required as a matter of law. *Josey*, 58 M.J. at 108. We did not set aside these punishments because it

was required as a matter of law. We did it to reach what we considered in our discretion was an appropriate sentence.

But for the order by the Court of Appeals for the Armed Forces, Judge Palmer presumably would adhere to the view taken in our earlier reconsideration decision and deem it inappropriate now to conduct a *de novo* review of the sentence without a finding of error, for he says his action was taken because, "it is necessary for us to follow our superior court's mandate." An alternative to that action would be to accept and follow Appellant's interpretation of the mandate from our higher court. In that regard, Appellant asserts that:

> The only lawful interpretation of the remand order is that C.A.A.F. directed a de novo review only in the event that the Court acknowledges it did, in fact, abuse its discretion. C.A.A.F.'s subsequent comment in United States v. Washington, No. 01-0658, 2002 CAAF LEXIS 1251 (C.A.A.F. September 30, 2002) indicates it viewed this case as "a limited remand … to ensure that the court below has applied the correct principles of law."). If this Court applied the correct principles of law, then there is no justification for a "de novo" review of the prior action.

Assignment of Errors and Br. dated 2 December 2002 p. 8. I agree with Appellant's interpretation of the order from above, and, since I believe we applied the correct principles of law in our earlier decisions, I would reaffirm the prior decisions of this Court and return the record directly to the Court of Appeals for the Armed Forces as ordered by that court. To do otherwise, as the majority has done, results in an increase in the approved sentence without any finding of error with respect to the sentence that has been set aside. To me such action is equivalent to the improper act of increasing a trial court's sentence without a finding that it was adjudged in error.

In addition to all that I have stated as wrong with the action in this case, I find that, significantly, it violates the United States Supreme Court's announced standard for an appellate court when reviewing a sentencing decision by a lower court. In a case involving a federal conviction and sentence after a state trial for the same acts, the Supreme Court reviewed the increase of the trial court's sentence by the United States Court of Appeals upon a determination by the appellate court that the trial court had not complied with the terms of downward departure from federal sentencing guidelines. In that regard, the Supreme Court had the following to say:

> **The appellate court should not review the departure [from the sentencing guidelines] decision *de novo*, but instead should ask whether the sentencing court abused its discretion.**

*Koon v. United States*, 518 U.S. 81, 91 (1996).  I dissent from the action taken by the majority in this case for its failure to follow the Supreme Court's guidance and for all of the other reasons outlined in this opinion.



For the Court


Roy Shannon Jr.
Clerk of the Court