# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Mike (NMN) OSUNA
## Seaman (E-3), U.S. Coast Guard

## CGCMG 0152

## Docket No. 1122

## 28 November 2001

General Court-Martial convened by Commander, Seventh Coast Guard District. Tried at NAS Jacksonville, Florida, and NSB Kings Bay, Georgia, on 16 and 17 November 1998 and 23 February through 2 March 1999.

| | |
|---|---|
| Military Judge: | CAPT Robert W. Bruce, USCG |
| Trial Counsel: | LT Julia Diaz-Rex, USCG |
| Assistant Trial Counsel: | LT(jg) Brian P. Hill, USCG |
| Detailed Defense Counsel: | LT Cindi Peppetti, JAGC, USNR |
| Assistant Defense Counsel: | LT Sean Sheppard, JAGC, USNR |
| Appellate Defense Counsel: | LT Sandra K. Selman, USCG |
| | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | LT(jg) Mark A. Cunningham, USCGR |
| | LT Sandra J. Miracle, USCGR |

### BEFORE
### PANEL EIGHT
### BAUM, CASSELS, & PALMER
Appellate Military Judges

CASSELS, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members. Despite his pleas of not guilty, he was convicted of one specification of violating a lawful general order by making unwelcome sexual advances to Seaman Apprentice (SA) K and creating an intimidating or hostile work environment; two specifications of wrongful maltreatment of SA K; one specification of adultery with SA K; and one specification of violating a lawful general regulation by engaging in sexually intimate behavior with SA K; in violation of Articles 92, 93, 134, and 92 of the Uniform Code of Military Justice (UCMJ), respectively. The military judge instructed the members that the specification alleging maltreatment of SA K was multiplicious for sentencing with the specification alleging sexually intimate behavior with SA K. The

members sentenced Appellant to a reduction to pay grade E-1, confinement for three months, and a dishonorable discharge (DD). The convening authority approved the sentence as adjudged.

Before this Court, Appellant has assigned three errors: that the evidence of record is insufficient to support a finding of guilt beyond a reasonable doubt to the two specifications alleging maltreatment of SA K; that Appellant's opportunity for clemency was materially prejudiced when the convening authority relied upon an incomplete and misleading Staff Judge Advocate's Recommendation (SJAR) and then took action without considering clemency matters submitted by Appellant; and that the sentence is inappropriately severe considering the nature of the offenses and Appellant's "good military character." For the reasons stated below, we find no merit in the first assignment of error, and we hold that the SJAR, though brief, contained the required essentials and was legally sufficient. However, with regard to the second assignment, we hold that there is no evidence in the record that the convening authority considered Appellant's clemency letter before taking action, and therefore set aside that action and return the record for a new action by the convening authority. We will address Appellant's third assignment of error when the record is returned following the convening authority's new action.

Background

Following completion of boot camp, SA K reported to the Coast Guard Honor Guard in Alexandria, Virginia, where she immediately assumed a trainee status involving at least eight weeks of rigorous indoctrination under the direction of two Honor Guard members referred to as trainers – Appellant and another seaman. SA K was required to obey her trainers. Trainers conducted frequent, meticulous uniform inspections upon the trainees. Any discrepancies found by the trainers, such as loose threads or scratches in brass, could result in the trainee's uniform being totally messed up, or "trashed," by the trainers. Trainers determined how quickly a trainee progressed through the training status. At about 2200 on 19 December 1996 Appellant entered SA K's barracks room, and had sexual intercourse with SA K. At about 2200 on 24 December 1996 Appellant again entered SA K's barracks room and had sexual intercourse with SA K. SA K did not report Appellant's misconduct on either occasion. These two acts of sexual intercourse are the subject of the two specifications of charge II alleging maltreatment of SA K in violation of Article 93, UCMJ. Following these two instances, SA K and Appellant had sexual intercourse on other occasions. On 18 February 1998 SA K was interviewed by a Coast Guard special agent on an unrelated matter. During that interview, SA K revealed Appellant's misconduct. On 2 March 1998, the special agent interviewed Appellant, who in 1997 had been transferred to a Coast Guard station in Georgia. Appellant admitted to having sexual intercourse with SA K while she was a trainee, but Appellant told the agent that the acts were consensual. Charges referred to court-martial against Appellant included allegations of rape on 19 and 24 December. At trial, the members found Appellant not guilty of the rape offenses, but guilty of maltreatment in connection with the same two incidents.

I.

In his first assignment of error Appellant contends that there was insufficient evidence to support the guilty finding entered on Specifications 1 and 2 of Charge III. These specifications allege that Appellant inflicted upon SA K on two occasions maltreatment in violation of Article

93, UCMJ; i.e., maltreatment through a particular type of sexual harassment.  Appellant notes that the Manual for Courts-Martial (MCM) establishes two types of sexual harassment:

> Sexual harassment include[s] "influencing, offering to influence, or threatening the career, pay, or job of another person in exchange for sexual favors," [*and*] "deliberate or repeated offensive comments or gestures of a sexual nature."

Appellant Br. at 14.

Appellant refers to the first-mentioned type of sexual harassment as the *quid pro quo* type.  Both specifications at issue allege maltreatment through the *quid pro quo* type of sexual harassment.  Appellant claims that "no evidence was introduced to sufficiently establish that Appellant influenced, offered to influence or threatened to influence [SA K's] training in return for sexual favors."  We disagree, and point out some of that evidence.

The Government's expert psychologist, who conducted a forensic evaluation of SA K, testified regarding statements SA K made to her about SA K's perceptions:

> [SA K] said the . . . first few times, it was the harder time for her, but that after that, she sort of . . . just gave up and just . . . went in with it, and did not see it as – almost kind of like expected that that was part of getting off without having to, perhaps, clean her gear as much . . . .  [T]here were some kind of comments between them that, if you do this, I will treat you well, sort of thing, in terms of what she had to do will go easier with her.

R. at 929-30.  Appellant contends that this testimony is vague and incoherent as it relates to the *quid pro quo* type of sexual harassment.  Appellant Br. at 16.  Although this testimony could have been clearer, it was supplemented by the psychologist's handwritten notes of her interview with SA K, admitted as Prosecution Exhibit 5, which state:

> He never threatened physically but threatened to Ruined [sic] my clickers – told me not to worry about doing them b/c I won't inspect them – if you don't go out – I'll trash them tomorrow.

The special agent who interviewed both Appellant and SA K testified regarding the *quid pro quo* nature of the alleged maltreatment:

> Basically, they had come to an agreement that if she basically allowed herself to be there or allowed him to do whatever he was going to do, she would be granted some leniency in inspections.  Now, they both knew, he knew and the victim knew, that he held in his power the ability to get her through an inspection or not.  If she got gigged one or more times, or however many times it was, she could be set back in training, no two ways about it.

R. at 633-34.

Defense counsel expressed surprise at trial at this testimony, the terminology of which was not precisely reflected in notes and materials produced during discovery. Appellant brought out during an Article 39(a) session that the "agreement" language was not contained in the agent's interview notes. R. at 635-46. Appellant here argues the special agent's testimony on this point is not reliable because it was based on the notes of another agent who was present at the interview. We disagree. The special agent's testimony was from his present recollection of the interview, which was not inconsistent with the interview notes. The fact that an agent's testimony from present recollection includes matters not precisely stated in his interview notes, does not make that testimony or those notes unreliable. It may, of course, open the door to attack on cross-examination. During cross-examination by defense counsel, the special agent testified as follows:

> She felt pressured. She felt if she didn't concede to his wishes, that him, being a trainer, basically, he ultimately rules everything that she does for about an eight-week period, she would be set back in training, and her goal was to get out of training and get through with it. So she did what she thought she had to.

R. at 683.

Although SA K's pretrial statements, testified to by the Government's expert psychologist and the special agent as described above, were supportive of the *quid pro quo* allegations in the maltreatment specifications, SA K's trial testimony was not. At trial SA K made no reference to an agreement with Appellant to go easier on her during the training period, or to a threat by Appellant to ruin her uniform. Instead, at trial SA K maintained that she submitted to Appellant's advances on 19 and 24 December because she was scared of him. R. at 710, 713. SA K's trial testimony on this point was contradicted by other evidence, which led to Appellant's acquittal on the rape allegations. Nevertheless, based on the entire record, we are convinced beyond a reasonable doubt that the findings of guilty as to Specifications 1 and 2 of Charge III are correct in law and fact.

II.

A. Sufficiency of the SJAR

In his second assignment of error, Appellant contends that the SJAR pursuant to Rule for Court-Martial (RCM) 1106 was incomplete and misleading, and that the convening authority failed to consider matters in clemency submitted on behalf of Appellant in accordance with RCM 1105. The SJAR in this case was brief. However, it does comport with RCM 1106 because it contains "concise information" as to the matters listed in that rule. Appellant principally faults the SJAR's presentation of "a summary of the accused's service record" as required by RCM 1106(d)(3)(C). That requirement reads as follows:

> A summary of the accused's service record, to include length and character of service, awards and decorations received, and any records of nonjudicial punishment and previous convictions . . . .

The SJAR contains the following summary of Appellant's service record:

> Summary of SR Osuna's service:  SR Osuna enlisted on 12 June 1995.  He received the unit awards listed on page 2 of enclosure (2) and his performance is summarized in enclosure (3).  Enclosure (4) notes that SR Osuna received nonjudicial punishment on 22 June 1997.

Enclosure (2) to the SJAR, a Personal Data Information Form, lists Appellant's awards and other personal information such as qualification codes, training, battery test scores, and dependency information.  Enclosure (3) lists the performance evaluation marks earned by Appellant throughout his career, including a breakdown of such marks in the factor areas of Military, Performance, Proficiency and Leadership.  We agree with Government Appellate Counsel's assertion that the abbreviated marks histories, such as Enclosure (3) to the SJAR, are understood by, and familiar to, all Coast Guard personnel with experience supervising enlisted personnel.  As such, this marks history breakdown does provide an extremely concise summary of the character of Appellant's service.  Enclosure (4) is an administrative remarks form documenting Appellant's nonjudicial punishment.

We find that the summary of service contained in the SJAR recommendation is sufficient.  While additional information might have been helpful to the convening authority in his review, such additional information is not required by the Manual.  The presence of the negative administrative remarks sheet, and the absence of similar positive documentation, does not indicate a skewed presentation in this case.  The negative administrative remarks sheet was required to be included by RCM 1106.  Similar positive remarks sheets were not, nor were they required by the rule to be, summarized in the SJAR.

Appellant also points out that the SJAR was defective in that it represented that Appellant was sentenced by a military judge, when he was actually sentenced by members; and that it erroneously labeled the Additional Charge as Charge IV.  We find that these errors did not materially prejudice the substantial rights of Appellant.  We also find that Appellant waived his right to object to these errors due to his failure to timely object to the SJAR, and the absence of plain error.  Article 60(d), UCMJ; RCM 1106(f)(6).

### B. Clemency Matter; Consideration by Convening Authority

Of great concern is Appellant's contention that the convening authority failed to consider matters in clemency submitted on behalf of Appellant, in accordance with RCM 1105.  Article 60(c)(2), UCMJ, declares:

> Subject to regulations of the Secretary concerned, [action on the sentence of a court-martial by the convening authority] may be taken only after consideration of any matters submitted by the accused under subsection (b) or after the time for submitting such matters expires, whichever is earlier.

This requirement that the convening authority consider any matters submitted by the accused is also contained in the Manual for Courts-Martial at RCM 1107(b)(3)(A):

Before taking action, the convening authority shall consider . . . (iii) Any matters submitted by the accused under R.C.M. 1105 or, if applicable, R.C.M. 1106(f).

Further, there must be evidence in the record of trial to show that the convening authority considered Appellant's clemency submissions. *United States v. Craig*, 28 M.J. 321 (CMA 1989). In *Craig*, our higher Court stated:

Speculation concerning the consideration of such matters simply cannot be tolerated in this important area of command prerogative . . . . "We announce that this court will not 'guess' as to whether clemency matters prepared by defense counsel were attached to the recommendation or otherwise considered by the convening authority."

*Id.* at 325 (citation omitted).

In its opinion in *Craig*, the Court of Military Appeals cited with approval and quoted the decision of our sister court in *United States v. Hallums*, in which the Army Court of Military Review was uncertain, after reviewing the record of trial, "what, if anything, the convening authority ever saw concerning the extensive clemency material addressed to him." 26 M.J. 838, 840 (ACMR 1988). The Army Court added that "[i]t would have been easy enough for the SJA to dispel such uncertainty. He could have listed, on his recommendation, the specific enclosures that went to the convening authority or he could have had the convening authority initial and date all the documents he considered." *Id.* *Hallums* held that "[t]here must be some tangible proof that the convening authority did, in fact, have these matters presented to him." *Id.* at 841. *Accord United States v. Godreau*, 31 M.J. 809 (AFCMR 1990) (requiring SJA, under *Craig*, to inform the convening authority that he must consider clemency matters and provide a means to determine that those matters were, in fact, considered such as initialing them when they are submitted and no addendum to recommendation is prepared).

This record contains a letter of 26 August 1999 from the assistant trial counsel to defense counsel forwarding the SJAR. That letter requested that defense counsel submit any RCM 1105 matters no later than noon on 10 September 1999. The record contains a certificate of service, signed by assistant trial counsel, evidencing that a copy of the SJAR "was served via Federal Express" to the trial defense counsel on 26 August 1999. Trial defense counsel's signature appears following an acknowledgement clause below the certificate of service. Her acknowledgement indicates she received the SJAR on 9 September 1999. This record of trial does contain a clemency request dated 9 September 1999 from trial defense counsel submitted pursuant to RCM 1105. This letter requested that the convening authority disapprove the dishonorable discharge due to the adverse impact it would have on Appellant throughout the rest of his life, and the other punishment he had received. The letter explained why, in Appellant's view, the dishonorable discharge was unduly harsh and inappropriate in this case. The action of the convening authority is dated 17 September 1999. There is nothing in this record to indicate that the convening authority ever received the defense counsel's 9 September letter, or that he reviewed or considered it prior to taking his action.

In its brief, the Government gives short shrift to Appellant's assignment of this error. The Government's entire response on this issue is as follows:

> Appellant complains that there was not explicit demonstration by the Convening Authority that 1105 materials were considered by him before taking action of the sentence. (AOE at 22.) Although it is good practice for the Convening Authority to memorialize consideration of all documents used to determine action under R.C.M. 1107, no such demonstration is required. This Court presumes that a Convening Authority has considered R.C.M. 1105 and R.C.M. 1106 materials in cases like this where there has been no affirmative showing of such consideration by means of the Convening Authority's initials on the recommendation or otherwise. *United States v. Garcia*, 44 M.J. 748, 749 (C.G.C.C.A. 1996).

Gov't Br. at 19-20.

This argument ignores our higher Court's opinion in *Craig*, and misrepresents this Court's decision in *Garcia*. In *Garcia*, in response to an assignment of error similar to the one here presented, the Government filed an affidavit from the SJA stating that Appellant's clemency submission was in a folder that was hand-delivered to the convening authority before he took his action, and the SJAR advised the convening authority that before acting he must consider the clemency matters submitted by Appellant. Under those circumstances – where there was evidence that the convening authority possessed, and received formal advice to consider, the clemency matter before acting – this Court found application of a presumption of regularity to be warranted. Our higher Court agreed. *United States v. Garcia*, 49 M.J. 21 (1998) (journal entry) ("We are satisfied that the convening authority considered appellant's clemency submission."). In the instant case, however, the bare-bones SJAR contains no such advice to the convening authority, and we are presented with no evidence that the convening authority ever saw, let alone considered, defense counsel's 9 September 1999 clemency request. Even our examination of the convening authority's action itself provides no hint that Appellant's clemency letter was considered. The convening authority's action exactly followed the recommendation in the SJAR, and granted no clemency relief, approving the entire sentence – a sentence including a dishonorable discharge which Appellant asserts in his third assignment of error was inappropriately severe. Therefore, our opinion in *Garcia* provides no support for the Government's argument.

Having found error in the post-trial processing of this case, we determine that return of the record of trial to the convening authority for a new action is the appropriate remedy. The convening authority is an accused's best chance for post-trial clemency. *See United States v. Wheelus*, 49 M.J. 283, 287 (1998). In this case, before we perform our review of the sentence, Appellant should have a full opportunity for clemency at the hands of the convening authority, acting as he does pursuant to "command prerogative." *United States v. Healy*, 26 M.J. 394, 396 (CMA 1988). We are mindful that the convening authority's action in this case, dated 17 September 1999, occurred approximately two years ago. However, we agree with our higher Court in *Craig*, a decision rendered two years after the convening authority's action, that a remand for a new action is the appropriate remedy. As the Court stated:

> Here, we . . . do not know whether the convening authority ever saw the proffered clemency materials or whether he considered such materials prior to his final action. A remand in this situation is . . . appropriate.

28 M.J. at 325.

### III.

Appellant's third assignment contends that the sentence, in particular the dishonorable discharge, is inappropriately severe in this case. In view of our action on Appellant's second assignment of error, we withhold our review of the appropriateness of the sentence until the convening authority has had an opportunity to exercise his clemency powers after consideration of Appellant's clemency letter.

### Conclusion

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty, as approved below, are affirmed. The action of the convening authority is set aside. The record is returned for submission to the convening authority for a new action after consideration of clemency matters previously submitted by the accused and his counsel. Thereafter, the record will be returned to this Court for review of the sentence.

Judge PALMER concurs.

BAUM, Chief Judge, concurring in part and dissenting in part:

I concur with the majority's finding of error in the post-trial processing of this case. I disagree, however, with the decision to correct this error by return of the record to the convening authority and to defer sentence-appropriateness review by this Court until later. I would correct the post-trial processing error by modification of the sentence at this time. As a starter, I would mitigate what I consider to be an inappropriately severe dishonorable discharge. Prior to that, however, I would set aside the findings of guilty of the two maltreatment specifications, as urged by Appellant, as well as the finding of guilty of violating a general order by making unwelcome sexual advances. In my view, the alleged victim, Seaman Apprentice K, was a willing participant in sexual relations with Seaman Osuna both during the period she was undergoing training and after.

Witnesses, including her mother, stated that she professed her love for Appellant, and I do not believe she was being truthful when she denied under oath that she ever made such statements. Most importantly, she never testified that there was ever any *quid pro quo* arrangement for her to have sex with Appellant. She testified that she submitted to Appellant and did not report his actions because she was afraid of him. That was the basis of the rape accusations. I do not believe that she submitted out of fear and the court members may not have believed her either when they acquitted Appellant of rape. Furthermore, I have problems with

the testimony of the forensic psychologist and the investigative agent on the maltreatment issue. I am not convinced beyond a reasonable doubt that the sexual relations between Appellant and Seaman Apprentice K constituted maltreatment in violation of Article 93, UCMJ, or that Appellant's sexual advances were unwelcome in violation of Article 92, UCMJ. I would set aside these three findings of guilty, affirm the findings of guilty of the remaining specifications in violation of Articles 92 and 134, UCMJ, and reassess the sentence.

For the Court,



Kevin G. Ansley
Clerk of the Court