# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Marlon D. HUTCHISON
### Machinery Technician Second Class (E-5), U.S. Coast Guard

## CGCMG 0132

## Docket No. 1090

## 14 December 2001

General Court-Martial convened by Commander, Seventh Coast Guard District. Tried at Charleston, South Carolina, on July 9-11 and 14-15, 1997.

| | |
|---|---|
| Military Judge: | CAPT Robert W. Bruce, USCG |
| Trial Counsel: | LTJG Julia Diaz-Rex, USCGR |
| Individual Military Counsel: | LTJG Susan Polizzotto, USCGR |
| Detailed Defense Counsel: | LT Brian D. Phelan, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Robert S. Schuda, USCG |
| | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | CAPT James Mongold, USCG |
| | LT Sandra J. Miracle, USCGR |

## RECONSIDERATION EN BANC*

BAUM, Chief Judge:

## Background

On 27 June 2001, a panel of this Court affirmed the findings of guilty in this case and only so much of the sentence approved below as provided for twenty-eight months confinement. In so doing, two of the panel judges expressly disapproved a bad conduct discharge (BCD) and a reduction to paygrade E-1, after determining that, under all the circumstances of the case, those sentence components should not be approved.[1] The circumstances of particular concern to the Court related to Appellant's subsequent conviction and sentence by a South Carolina state court for offenses based on the same misconduct. Information concerning that trial was placed in the record by Appellant's trial defense counsel in a clemency petition addressed to the convening authority in accordance with Rule for Courts-Martial (RCM) 1105. It was also brought to this

---

* Judge Kantor recused himself from this decision, and Judge Bruce did not participate because he was the trial judge below.

[1] *United States v. Hutchison*, 55 M.J. 574 (C.G.Ct.Crim.App. 2001).

Court's attention specifically by Appellant's assertion pursuant to *United States v. Grostefon*, 12 M.J. 431 (CMA 1982), that he had been subjected to double jeopardy in violation of the Fifth Amendment. We rejected that assertion, but other issues inherent in his *Grostefon* filing prompted us to order more information from the parties concerning the state trial and the events leading up to the court-martial, to determine whether Coast Guard prosecution constituted a violation of the policy articulated in the Manual for Courts-Martial (MCM) and the Coast Guard's Military Justice Manual (MJM) against trial by court-martial when a state trial for the same acts is pending. We also sought more information concerning the state trial sentence based on questions generated by oral argument.

Documents and briefs by the parties revealed that permission for trial by court-martial had been sought and granted, as required by the MJM. However, despite ostensible compliance with that Manual, two of the panel judges determined that the double punishment effect from the state trial warranted a lesser court-martial sentence in the interests of justice and fairness. Accordingly, after considering all the circumstances of the case, the Court, in furtherance of its responsibilities under Article 66(c), UCMJ, to affirm "only such . . . amount of the sentence, as it . . . determines, on the basis of the entire record, should be approved," affirmed only the twenty-eight months confinement. One judge dissented from this sentence action. Afterwards, in response to a motion by the Government, the Court, on 9 August 2001, ordered reconsideration of its earlier decision, to be heard by the Court sitting as a whole.[2] In taking this action, the Court determined that there were questions of exceptional importance inherent in its earlier decision, specifically, its authority to review a decision by the Coast Guard to court-martial Appellant while a state trial was pending for the same acts, and its authority to consider the results of that review, as well as the state court's findings and sentence, in determining a sentence that should be approved pursuant to Article 66 of the Uniform Code of Military Justice (UCMJ).

## I. Issues for Reconsideration

### a. Sentence Appropriateness Determination by a Panel

The Government has not dealt directly with the particular questions posed in our reconsideration order, concentrating instead on arguing that the sentence approved by a panel of this Court was inappropriate and that the *en banc* Court should replace that approved sentence with one that includes a BCD. Before proceeding further, we want to make it clear that we did not grant reconsideration in order to revisit the earlier sentence determination. At least one of our higher court's judges, former Chief Judge Everett, has expressed the view that it is not even within our power to do that. In discussing the 1983 amendment to Article 66(a), UCMJ, which authorized *en banc* reconsideration of a panel decision, Chief Judge Everett had this to say:

> In view of the purposes of this amendment – to resolve differences as to legal issues – I do not believe that it confers upon the Court of Military Review [now the Court of Criminal Appeals] the power to reconsider *en banc* a factual finding or a determination of sentence appropriateness made by a panel. Instead, only the panel's conclusions of law may be reconsidered.

---

[2] *United States v. Hutchison*, 56 M.J. 507 (C.G.Ct.Crim.App. 2001) (Order – Reconsideration *En Banc*).

*United States v. Flowers*, 26 M.J. 463, 466 (CMA 1988) (Everett, C.J., concurring in the result). The question whether we are precluded from reconsidering the earlier sentence determination by a panel, as suggested by Chief Judge Everett, can only be resolved by a majority of our higher court. Meanwhile, whether or not it is within our power under Article 66(a), UCMJ, we have determined that it would be inappropriate for us to reconsider the prior action reducing the sentence simply because we might disagree with the panel's sentence assessment. Accordingly, we will limit ourselves to the legal issues that have been raised, reviewing the approved sentence only if an error of law led to that action.

### b. Authority to Review Both the Decision to Court-Martial Appellant And the Action by the State

The Government has asserted two legal issues: that the Court exceeded its authority by improperly relying on matters outside the record and by exercising clemency rather than determining sentence appropriateness under Article 66(c), UCMJ. These contentions will be addressed, but first, the questions posed in our reconsideration order need to be resolved. Does this Court have authority to review the Coast Guard's decision to court-martial Appellant while a state trial was pending for the same acts, and, if such a review is proper, may the Court consider the results of that review, as well as the state court's findings and sentence, in the course of meeting its sentence approval responsibilities pursuant to Article 66, UCMJ? As to the first question, we hold that this Court has authority under Article 66(c), UCMJ, to review the decision to court-martial Appellant while a state trial was pending. As part of our responsibility to assure that the findings and sentence are correct in law and fact, such a review is necessary in order to determine whether the decision to try Appellant by court-martial comported with policy and procedural requirements in the Manual for Courts-Martial and Coast Guard Military Justice Manual. We further hold that the facts developed by that review, including the state court's findings and sentence, if properly a part of the entire record, may be considered by this Court when determining a sentence that should be approved pursuant to Article 66(c), UCMJ.

### c. Matters Properly in the Record

The Government contends that the information concerning Appellant's state criminal proceedings constitutes extra-record material not relevant to his court-martial, and, therefore, beyond our authority to consider in approving a sentence. Indeed, it is a given that our sentence determination under Article 66(c), should be based on matters in the record, not outside. Guidance on what is in the record for purposes of determining an appropriate sentence is provided in *United States v. Healy*, 26 M.J. 394 (CMA 1988). Information submitted by an appellant to the convening authority in a clemency request is in the record and may be considered by the Court with respect to sentence appropriateness. According to *Healy*, information bearing on rehabilitation is a prime example of such information, since "the accused's potential for rehabilitation . . . is relevant both to clemency and to sentence appropriateness." *Id.* at 396. Evidence after trial that is received by the Court that is relevant to other matters may also be considered for sentence purposes. The example given in *Healy* was evidence of insanity developed after trial and action by the convening authority, which was received as relevant to mental competence to stand trial, to cooperate with the appeal, or mental

responsibility for the crime itself. "Once admitted for this purpose, the information would be in the 'record' and presumably could be used by the Court of Military Review [now the Court of Criminal Appeals] in performing its task of determining what sentence is appropriate." *Id.* at 397 n.6. *Healy* also discusses how an issue may be raised personally by an appellant pursuant to *United States v. Grostefon*, *supra*, and how the Court may require briefing of such an issue, thus incorporating it into the record. *Healy*, 26 M.J. at 397. It follows that the evidence received with regard to such an issue is also properly in the record. We have already indicated that the information considered by this Court was derived from the following sources: the RCM 1105 clemency petition by trial defense counsel; the *Grostefon* issue personally raised by Appellant; and documents ordered by the Court to resolve issues generated by the *Grostefon* filing and oral argument. Under the terms of *United States v. Healy*, this information was properly before the Court and was a part of the "entire record" to be considered in deciding what sentence should be approved pursuant to Article 66(c), UCMJ.[3]

### d. Clemency or Sentence Appropriateness

The remaining assertion by the Government, that this Court improperly engaged in clemency action rather than a determination of sentence appropriateness under Article 66, UCMJ, requires a closer look at the holding in *United States v. Healy*, *supra*, from the perspective of earlier opinions on this subject. *Healy* held that our military appellate courts may refuse to consider evidence proffered for consideration in determining the sentence to be approved, if that evidence relates to clemency. In reaching its decision that the Air Force Court had not erred in denying a defense motion to attach twenty-five letters recommending a reduction of confinement, the Court of Military Appeals distinguished between sentence appropriateness determinations, which courts perform, and clemency actions that Congress left to others. The Court of Military Appeals held that the Air Force Court of Military Review was within its authority to deny attachment to the record of documents it saw as oriented towards clemency rather than sentence appropriateness. The Court did not hold, or even intimate, that a court of military review was precluded from a sentence action with attributes of clemency, if that action was properly based on information within the entire record.

Most importantly, the *Healy* decision did not overrule, or modify in any way, *United States v. Lanford*, 6 USCMA 371, 20 CMR 87 (1955), a case cited in *Healy*, which discusses the authority of our forerunner boards of review to reduce sentences. The author of the principal opinion, Chief Judge Quinn, had the following to say about that authority, which originated from the same Article 66(c) language that we have today for our current courts:

---

[3] When considering this material of record earlier, a mistaken reliance on an erroneous assertion and a misreading of the state court's action resulted in misstatements in the previous opinion as to the timing of the state trial and the sentence from that court. The state trial was held approximately two months after Appellant's court-martial, not two weeks, as we indicated, and the sentence imposed by the state court was suspended in its entirety, not in part, as previously stated. Despite the misstatement as to the state sentence, the prior decision was rendered with the understanding of the panel that Appellant had not served any confinement adjudged by the state and would not serve any of that confinement unless the suspension was subsequently vacated. Neither misstatement had an effect on the sentence decision of the Court.

> One of the principal matters Congress considered at the time of the enactment of the Uniform Code was the establishment of a procedure for review of the sentence which would ensure a fair and just punishment for every accused. To achieve that purpose, Congress gave the convening authority the power to approve a sentence in his discretion. But it made his decision subject to review by a board of review. United States v Brasher, 2 USCMA 50, 6 CMR 50; United States v Cavallaro, 3 USCMA 653, 14 CMR 71. The name by which the board's power is denominated is really unimportant. What is important is that, within the limitations of its own authority, the board of review can, in the interests of justice, substantially lessen the rigor of a legal sentence. The board of review, therefore, can be compassionate; it can be lenient; it can be forbearing. If one prefers to call the influence of those human qualities in the mitigation of a sentence the exercise of the judicial function of determining legal appropriateness, the description is proper. Tah Do Quah v State, 62 Okla Cr 139, 70 P 2d 818. On the other hand, if one wishes to call it clemency, that description also is proper. The title applied to the power matters little, so long as it is clearly understood that the law invests boards of review with the power to treat "an accused with less rigor than their authority permits." United States v Cavallaro, supra, page 655.

6 USCMA at 378-79, 20 CMR at 94-95. Unchanged by the holding in *Healy*, the conclusion from *Lanford* still pertains, that, as long as sentence action is based on information in the entire record, our courts are invested by law with power to reduce sentences, whether one calls the action clemency or sentence appropriateness.[4] Our prior action on the sentence was based on matters in the entire record and was stated in terms of a determination of an appropriate sentence. It matters not what that action was called, however, because it was within the authority of this Court, based, as it was, on information properly included in the record. For these reasons, we have rejected the Government's assertion that our sentence action was improper as clemency action based on matters outside the record. We have found no legal error in the earlier panel decision that may have led to its action on the sentence. Accordingly, that concludes our reconsideration of the previous decision, having stated at the outset that we would limit ourselves to legal issues and would review the approved sentence only if an error of law led to that action.

### Conclusion

Upon reconsideration, this Court's decision of 27 June 2001 is reaffirmed. In taking this action, we are fully cognizant of a misstatement by the staff judge advocate in his recommendation to the convening authority that the sentence included forfeiture of all pay and allowances, and that this erroneous statement of that sentence element was carried over in the

---

[4] This outlook is echoed by Judge Brosman in his *Lanford* concurring opinion:

> As the Chief Judge has observed, a distinction has long been drawn between the taking of steps to rectify inappropriateness of sentence, on the one hand, and, on the other, clemency action. . . . Yet, as I have previously pointed out, it is frequently almost impossible to differentiate between the two sorts of action. See, e. g., my concurring opinion in *United States v Coulter*, 3 USCMA 657, 14 CMR 75. Insofar as review of quantum of sentence is concerned, I am in entire accord with [Chief] Judge Quinn that a board [of review] is under no compulsion to limit itself by some dichotomy of theory between clemency and mitigation.

6 USCMA at 386, 20 CMR at 102 (Brosman J., concurring). *See also United States v. Rasmussen*, 4 M.J. 513, 514 (CGCMR 1977).

court-martial order that was issued. The sentence did not include forfeitures of any amount. Accordingly, a supplementary court-martial order should be issued by appropriate authority reflecting the correct adjudged sentence. It is also noted that the record does not reflect compliance with *United States v. Craig*, 28 M.J. 321 (CMA 1989), by establishing that the convening authority considered the petition for clemency submitted pursuant to RCM 1105 when he took action on the sentence. That defect can be corrected by return of the record to the convening authority, as was done in *United States v. Osuna*, __ M.J. ___ (C.G.Ct.Crim.App. 2001), or by affidavits submitted to this Court, *United States v. Garcia*, 44 M.J. 748 (C.G.Ct.Crim.App. 1996). It may also be corrected by sentence action at this level. Appellate defense counsel noted this record defect along with the erroneous court-martial order and staff judge advocate's recommendation, in his reply brief of 12 March 1999, and requested correction through adjustment of the findings and sentence. Appellant Reply to Gov't Answer at 6. The clemency petition had requested disapproval of the BCD and suspension of the balance of confinement. All confinement had been served at the time of our prior decision disapproving the BCD, which we have now reaffirmed. Appellant having received the requested disapproval of his BCD, no useful purpose is served by returning the record to the convening authority or by receiving affidavits. Accordingly, no further action with respect to this matter will be taken.

Judges Cassels and Palmer concur.

KILROY, Judge, concurring in part and dissenting in part:

I agree with the majority that it would, unfortunately, be inappropriate for the Court to reconsider a prior panel's sentence determination simply because we disagree with that assessment. I also agree that this Court has authority under Article 66(c) to review the decision to court-martial Appellant while a state court trial is pending, to determine whether that decision comported with Coast Guard policy and procedural requirements. I disagree, however, with the majority's holding that a state court sentence arising from the same acts that previously resulted in the announcement of a court-martial sentence may be considered by a court of criminal appeals in determining the appropriateness of that court-martial sentence.

We held in our prior consideration of this case that, despite a pending state prosecution arising out of the same misconduct, Appellant's court-martial had proper jurisdiction to proceed. *United States v. Hutchison*, 55 M.J. 574, 581 (C.G.Ct.Crim.App. 2001). It is well established that prosecutions by separate sovereigns for the same offense are not precluded by Fifth Amendment double jeopardy concerns. *Id.* at 579. Additionally, we found that the authorization to proceed with the court-martial had comported with the Secretarial regulations, promulgated pursuant to RCM 201(d)(2), governing court-martial in these circumstances. *Id.* at 581.

Having held that Appellant's court-martial accorded with both law and Coast Guard policy, we nevertheless went on to lessen the court-martial sentence as an exercise of our Article 66(c) sentence appropriateness authority. We did this because we were "concerned that Appellant was tried and punished twice for the same acts." *Id.* I believe that our consideration of the subsequent action by the state in this case violated fundamental notions of federalism, and that our prior decision therefore cannot stand.

"Federalism" precludes equitable intervention by federal courts in state court proceedings. *Younger v. Harris*, 401 U.S. 37 (1971). Though the prohibition of *Younger* was directed at federal injunction of state court proceedings, I believe the power conferred by Article 66(c), that is, the "judicial function of assuring that justice is done and the accused gets the punishment he deserves," can fairly be described as "equitable," and should be circumscribed by the same restrictions applicable to other equitable powers, to the extent that their exercise may unduly impinge on state authority.

In our prior decision, we did not opine that the punishment adjudged at court-martial was unjust. In fact, we noted that "[n]ormally, a punitive discharge and reduction in paygrade [sic] would appear to us as appropriate sentence elements for the kind of offenses committed by Appellant." 55 M.J. at 582. Instead, we based our decision on our belief that "Appellant should not have been tried and punished twice for these offenses." *Id.* In other words, we did not doubt the appropriateness of the court-martial sentence. Our only concern was with the propriety of the later state-imposed sentence. Since "we have no authority to do anything with respect to the South Carolina court's conviction and sentence," because we obviously lack any jurisdiction to do so, we instead used our plenary power to "*lessen* [*the*] *effect* [*of the state-imposed punishment*]" by modifying the court-martial sentence." *Id.* at 581 (emphasis added). This back door employment of our Article 66(c) power to offset, in effect, a criminal sentence duly imposed by a state impermissibly interfered with the state's exercise of its criminal jurisdiction.

Our invocation of *United States v. Pierce,* 27 M.J. 367 (CMA 1989), to justify our action was in error. *Pierce* may indeed justify the lessening of a court-martial sentence when a service member has been "twice punished for the same offense. . . ." *Id.* at 369. However, Supreme Court double jeopardy jurisprudence makes it clear that the basis for the State punishment in this case was not, as in the *Pierce* court-martial for an offense earlier the subject of nonjudicial punishment, the same offense, but was instead an entirely separate offense. "[I]t cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable." *Bartkus v. Illinois*, 359 U.S. 121, 131-32 (1959), quoting *Moore v. Illinois*, 55 U.S. (14 How.) 13, 20 (1852). The Federal prosecution in this case was for offenses under Federal law; the state prosecution was for an offense under state law.[5] Thus, our invocation of sentence appropriateness authority to alleviate our concern that Appellant was punished twice for the same offense was in reality the imposition of a double jeopardy bar to prosecution by separate sovereigns even though, by law, no such bar exists.

Appellant, to his misfortune, committed his crimes in a state whose criminal justice authorities were not satisfied by the court-martial result. The state prosecutor and judge were both aware of the prior results of Appellant's court-martial. R. at Gov't Mot. Recons. With knowledge of the sentence adjudged at court-martial, the state prosecutor sought, and the state judge imposed, additional punishment that they determined to be appropriate. We should also recognize that the state legislature knows how, if it so desires, to limit the authority of its prosecutors to pursue the punishment of acts that have led to prior punishment by another

---

[5] *Cf. Houston v. Moore*, 18 U.S. (5 Wheat.) 1 (1820) (State statute imposed state sanction for violations of a federal law. State prosecution held to be not for a similar crime arising out of the same conduct, but for the same crime.). *See discussion at Bartkus v. Illinois*, 359 U.S. 121, 130 (1959).

sovereign. *See* S.C. Code Ann. § 44-53-410 (Law. Co-op. 1971) (barring prosecution for narcotics offenses if the same act has previously led to conviction or acquittal under federal law or the law of another state).

In spite of these facts, we exercised our Article 66(c) power to limit, in effect, the state's exercise of its own criminal justice jurisdiction. At that point, of course, the state lacked any power to offset our explicit "lessening" of the effect of its punishment. So denying a state its full power to enforce criminal law because a convening authority has "won the race to the courthouse," *Heath v. Alabama*, 474 U.S. 82, 93 (1985), is an "untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines." *Id.* (quoting *Bartkus,* 359 U.S. at 137). I believe this was impermissible.

In light of the foregoing discussion, I would determine anew what sentence, or part thereof, should be approved pursuant to Article 66(c), UCMJ, without considering the subsequently imposed state sentence. I would then agree with the majority in our prior decision of this case that "no other basis . . . warrants setting aside the findings and sentence. . . ." 55 M.J. at 581.

For the Court,



Kevin G. Ansley
Clerk of the Court